UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br><br>v.<br><br>KING ISAAC UMOREN,<br><br>    Defendant | Case No.: 2:16-cr-00374-APG-NJK<br><br>**Order Granting in Part the Government's Motion in Limine Regarding Umoren Impersonating Law Enforcement**<br><br>[ECF No. 209] |

      Plaintiff United States of America moves to admit evidence of defendant King Umoren's alleged pattern of impersonating federal agents or law enforcement. ECF No. 209.  The superseding indictment charges Umoren with wire fraud, aggravated identity theft, and filing false tax returns in connection with Umoren's tax preparation business, Universal Tax Services (UTS). ECF No. 120.  Count 11 of the superseding indictment charges Umoren with impersonating a United States officer or employee in violation of 18 U.S.C. § 912. *Id.* at 6-7.

      UTS prepared a tax return for a client who refused to pay the preparation fee.  According to the Government, on February 7, 2016, Umoren went to the client's home seeking payment. The Government represents that witnesses will testify that Umoren drove to the client's home in a vehicle equipped with red and blue police lights, that he was outfitted in law enforcement gear, and that he had a badge identifying him as an FBI agent.  The Government contends that during this incident, Umoren told neighbors and the client's wife that he was working for the FBI and told the client's wife that if the client had been home the client would have been arrested. According to the Government, the client will testify that when he later called Umoren, Umoren told him to either pay the fee or go to an address, which was an FBI field office, to be arrested.

After Umoren was arrested, his estranged wife turned over his computer to investigators. Investigators found on the computer a digital image of a fake FBI badge with Umoren's picture and name on it (ECF No. 209 at 8-9), other fake federal credentials that did not have Umoren's name or picture (*id.* at 19; ECF Nos. 209-5; 209-6), pictures of Umoren in law enforcement garb at the UTS office (ECF No. 209 at 18), and a video in which Umoren dressed as a law enforcement officer and discussed police equipment (ECF No. 215, manually filed video).

The Government seeks a pretrial ruling to admit (1) testimony by several UTS employees that Umoren identified himself to them as an FBI agent and wore law enforcement equipment and FBI credentials, (2) the fake credentials and templates obtained from Umoren's computer, (3) pictures of Umoren dressed in law enforcement garb and possessing law enforcement equipment, and (4) the video of Umoren discussing law enforcement equipment. The Government contends this evidence is admissible as inextricably intertwined with the charges against Umoren. Alternatively, the Government contends the evidence is admissible under Federal Rule of Evidence 404(b) because it is evidence of preparation, a common scheme or plan, or lack of mistake on either Umoren's part or that of the persons to whom he made representations.

Umoren responds that the credentials taken from the computer are irrelevant because no witness will testify that those are the credentials Umoren allegedly displayed to them. He also argues the proposed evidence and testimony should be excluded under Rule 403 as unfairly prejudicial because it is unrelated to the event that forms the basis of count 11. Umoren contends the proposed evidence is inadmissible propensity evidence under Rule 404.

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 401. Relevant evidence is generally admissible. Fed. R. Evid. 402. But even relevant evidence may be excluded if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Rule 404(b)(1) prohibits using evidence of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Evidence should not be considered other crimes or other act evidence within Rule 404(b)'s meaning "if the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (quotations omitted). An act is inextricably intertwined with the charged offense when (1) "particular acts of the defendant are part of . . . a single criminal transaction," or (2) the other act evidence is "necessary [to admit] in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018) (quotation omitted). "In determining whether particular evidence is necessary to the prosecution's coherent and comprehensible story, [I] ask whether the evidence bears directly on the charged crime." *Id.* at 928-29 (quotation omitted). "There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Id.* at 929 (quotation omitted).

### A. Testimony by UTS Employees

Count 11 charges Umoren with impersonating a federal official. That offense requires the Government to prove Umoren "falsely assume[d] or pretend[ed] to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof" and that he "act[ed] as such, or in such pretended character demand[ed] or obtain[ed] any money, paper, document, or thing of value." 18 U.S.C. § 912. Evidence that a person has a pattern or scheme of impersonating a federal official during the time frame at issue may be inextricably intertwined with the first element of this offense. *See United States v. Robbins*, 613 F.2d 688, 693-94 (8th Cir. 1979); *Whaley v. United States*, 324 F.2d 356, 358 (9th Cir. 1963).

Testimony by UTS employees that Umoren identified himself to them as an FBI agent and wore law enforcement equipment and FBI credentials is inextricably intertwined with count 11 because it tends to show he had a pattern or scheme of impersonation. Additionally, depending on how these witnesses testify, the testimony may also be inextricably intertwined with the wire fraud and false tax return charges. The Government notes that Umoren telling UTS employees that he was an FBI agent may explain why UTS employees did not question Umoren's practices at UTS, because they would trust that an FBI officer would not engage in unlawful activity. If UTS employees lay this foundation, then the testimony may also be necessary for the prosecution to tell a coherent story as to why the UTS employees followed Umoren's instructions.

Even if this testimony is not inextricably intertwined, it alternatively is admissible under Rule 404(b) to show that Umoren had a plan or scheme to identify himself as an FBI agent, that he did not mistakenly identify himself as an FBI agent to individuals during the February 2016 incident, or that those individuals were not mistaken about whether Umoren was representing

himself as an FBI agent. Finally, this evidence's probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403. The testimony has significant probative value, particularly in relation to count 11. And prejudice may be lessened through a limiting instruction. *See Robbins*, 613 F.2d at 695. I therefore grant this portion of the Government's motion, subject to witnesses laying a proper foundation for introduction of the testimony at trial. Umoren may request and propose limiting instructions.

### B. Fake Federal Credentials

The Government seeks to introduce fake federal credentials located on Umoren's computer. These include one FBI badge with Umoren's picture and name on it, along with some blank templates and fake credentials for the FBI and other agencies with other individuals' names and pictures. Umoren contends that the credentials and templates obtained from his computer are irrelevant and should be excluded under Rule 403.

Assuming the Government is able to lay the foundation at trial for admission of items obtained from Umoren's computer, evidence that Umoren had an FBI badge on his computer with his name and picture on it that was created before the February 2016 incident, as well as other FBI badge templates, is relevant to the charge in count 11. It tends to prove that Umoren impersonated a federal agent and corroborates witness testimony from the February 2016 incident that Umoren was wearing an FBI badge. Although Umoren contends no witness will testify that the image on the computer is the same as the badge the witnesses assert he was wearing, it is unknown at this time what the witnesses will say. Moreover, that is a matter for cross examination, not exclusion on relevancy grounds.

Evidence that Umoren had an FBI badge for himself and other FBI badge templates on his computer is inextricably intertwined with the charge in count 11 because the witnesses at the

February 2016 incident reported that Umoren was displaying an FBI badge and the fake badge on the computer was created only five months before.  Even if this evidence was not inextricably intertwined with count 11, it would be admissible under Rule 404(b) to show Umoren had a plan, pattern, or scheme of impersonating a federal official and prepared to do so by, among other things, creating and then displaying an FBI badge.  It may also show that he did not mistakenly identify himself as an FBI agent, and that the individuals to whom he identified himself as an FBI agent did not misunderstand him.  The probative value of the fake badge and templates is not substantially outweighed by the prejudicial effect for the same reasons discussed above with respect to the UTS employee testimony.  I therefore grant this portion of the Government's motion with respect to the fake FBI credentials and templates.

However, I exclude the fake credentials for other agencies, such as NCIS and CIA, which do not have Umoren's name or picture on them.  The Government has not suggested that Umoren told anyone that he was an agent for NCIS or CIA.  The existence of these fake credentials therefore is not inextricably intertwined with any of the charges and the Government can tell a complete story without reference to these fake credentials.  Additionally, although the existence of other fake credentials that Umoren apparently never used may have some slight probative value, that is substantially outweighed by the danger of unfair prejudice, as it may lead jurors to speculate as to whether Umoren engaged in other impersonations about which they will not be told.  This evidence also raises the danger of wasting time and needlessly presenting evidence that is cumulative of the more probative fake FBI credentials and templates.  I therefore exclude the fake NCIS and CIA badges.

/ / / /

/ / / /

### C. Pictures of Umoren

The Government seeks to introduce pictures of Umoren with UTS employees at the UTS offices in which Umoren is dressed in law enforcement gear, such as displaying a badge or having a holstered gun. Umoren contends these photographs are irrelevant because the photographs are undated, they were taken in support of his other business that sold law enforcement equipment, and no witness from the February 2016 incident will testify that they saw these pictures. He also contends this evidence should be excluded under Rule 403 because it is unfairly prejudicial, and under Rule 404 because it is propensity evidence.

Assuming the Government is able to law a foundation at trial, the pictures are relevant because they may be inextricably intertwined with the wire fraud and false tax return charges for the same reasons as the UTS employee testimony, as the pictures would corroborate UTS employees' accounts of Umoren cloaking himself in the legitimacy of being an FBI agent. Additionally, the pictures would be admissible under Rule 404(b) for the same reasons as the UTS employee testimony and the fake FBI credentials. The pictures tend to show that Umoren had a pattern, scheme, or plan to identify himself as an FBI agent, that he did not mistakenly mislead people into believing that he was law enforcement, or that the misled individuals were mistaken about what Umoren conveyed to them. And the probative value of the pictures is not substantially outweighed by the danger of unfair prejudice for the same reasons as the other evidence. I therefore grant this portion of the Government's motion.

### D. Video

The Government seeks to introduce a video in which Umoren is dressed in law enforcement garb and discusses the use of law enforcement equipment. Umoren notes that this

video is related to his other business, which sold law enforcement equipment to Nigeria. He asserts the video is irrelevant to the present charges and should be excluded under Rule 403.

The video, which the Government represents was created in December 2010, depicts Umoren in a vest with the word "police." He is wearing a badge, but it is unclear from the video what law enforcement agency is depicted on the badge. During the video, Umoren discusses equipment such as holsters, clips, handcuffs, and batons, and occasionally he states how he uses these items in his "work."

The video is not entirely irrelevant because it arguably shows Umoren impersonating a law enforcement officer and wearing equipment that may be consistent with what witnesses described in relation to the February 2016 incident. But its probative value is weak. The vest uses the word "police," not FBI. More importantly, the video was created years before the incidents at issue and before Umoren had even organized UTS as a Nevada company. *See* ECF No. 233-4 (showing UTS was formed in September 2012). It therefore is not inextricably intertwined with the charged offenses and the Government can tell a complete story without reference to the video. Even if the video was admissible under Rule 404(b), the slight probative value is substantially outweighed by the danger of wasting time and needlessly presenting evidence that is cumulative to more probative evidence. I have already granted the Government's motion to admit testimony that Umoren identified himself as an FBI agent and wore law enforcement paraphernalia at the UTS office, as well as pictures of Umoren wearing law enforcement paraphernalia, including a badge and holstered gun. I therefore deny this portion of the Government's motion.

/ / / /

/ / / /

### E. Conclusion

I THEREFORE ORDER the United States' motion in limine **(ECF No. 209) is GRANTED in part.**

DATED this 3rd day of December, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE